IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MICHAEL BRUCE ROGERS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-122 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Michael Bruce Rogers, Jr., ("Plaintiff"), appeals the decision of the Acting Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.  **BACKGROUND**

Plaintiff protectively applied for DIB and SSI on October 6, 2010, alleging a disability onset date of January 30, 2009. Tr. ("R"), pp. 150, 152, 188, 189. Plaintiff was thirty-eight years old at his alleged disability onset date and was forty-two years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 23,

152. Plaintiff applied for disability benefits based on status post kidney transplant (twice), status post appendectomy, hypertension, gout, gastroesophageal reflux disease, anemia, insomnia, degenerative joint disease of the right knee, depression, and anxiety. R. 29, 87-88, 193. Plaintiff had earned his General Educational Development certificate, and prior to his alleged disability had accrued a relevant work history that included office clerk, courier, and lab technician. R. 36, 92, 122.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 127-32, 135, 144. Plaintiff requested a hearing before the ALJ, R. 146, and the ALJ held a hearing on August 9, 2012. R. 83-126. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Plaintiff's father and from Clarence Hewlett, a Vocational Expert. Id. On September 26, 2012, the ALJ issued an unfavorable decision. R. 23-43.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since his alleged onset date of January 30, 2009. (20 C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.).

2. The claimant has the following severe impairments: status post kidney transplant (twice), osteoporosis, and status post arthroscopic surgery to the right knee secondary to medial crucial ligament tear (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except frequent climbing ramps and stairs; no climbing ladders, ropes or scaffolds; frequent

balancing and stooping; no kneeling, crouching or crawling; and avoid concentrated exposure to extreme heat, humidity, machinery and heights.[1] The claimant must have an option to alternate sitting and standing and is further limited to occupations requiring no more than simple routine repetitive tasks not performed in a fast paced production environment, involving only simple work related instructions and decisions and relatively few work place changes. Thus, the claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including mail clerk, office helper, and ticket seller. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2009, through September 26, 2012 (the date of the ALJ's decision). (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 28-38.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to make a proper credibility determination when considering alleged side effects of Plaintiff's medication, the testimony of Plaintiff's father, and Plaintiff's daily

---

[1]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

3

activities, and (2) the AC failed to properly consider medical records of Dr. Ben C. Bernard in support of Plaintiff's contentions concerning the severity of his mental impairments of depression and anxiety. See doc. no. 7 ("Pl.'s Br."). The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. See doc. no. 9 (Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v.

Commissioner of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff's allegations of error revolve primarily around the assertion that the ALJ failed to make proper credibility determinations about multiple pieces of evidence in the record. None of his arguments form a valid basis for reversal or remand.

### A. Standard for Evaluating Subjective Complaints.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must

articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Commissoner of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4).) As explained in Social Security Ruling 96-7p, the ALJ must consider the entire record in evaluating credibility, including objective medical evidence, the individual's own statements, and statements from doctors or other persons about the claimant's symptoms and how they affect the claimant. SSR 96-7p, 1996 WL 374186, at *1-2 (July 2, 1996).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted). Social Security Ruling 96-7p similarly requires, "When evaluating the

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6

credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4.

### B. The ALJ Properly Assessed the Alleged Side Effects of Plaintiff's Medication.

According to Plaintiff, the ALJ did not properly take into account that he has been on medication for years because of his two kidney transplants. In particular, Plaintiff claims that one of the medications, Gengraf, "causes your immune system to be low and damages your joints and bones . . . and . . . causes the shakes." Pl.'s Br., pp. 3-4 (citing R. 94, 99). Plaintiff also describes general malaise, tiredness, and dizziness as side effects of his medicine. Pl.'s Br., p. 4. Plaintiff's father also testified that some days Plaintiff had trouble getting out of bed and that he thought the cumulative effect of Plaintiff's medicine was "just taking [its] toll." Id. (citing R. 116, 117.) Although Plaintiff fails to offer any specific information as to how these alleged side effects from his medicine prevent him from doing the light work that the ALJ identified in the RFC, he claims the ALJ erred by failing "to make finding regarding the effect of the prescribed medications on Plaintiff's ability to work." Pl.'s Br., pp. 5-6 (citing Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981) for proposition that ALJ has duty to illicit testimony and make findings about medicinal side effects because of possibility such could contribute to disability).

The ALJ's opinion mentioned Plaintiff's medication at least four times. R. 29, 32, 33, 34. The ALJ's RFC determination that is detailed *supra* also contains numerous exertional limitations on climbing, balancing, stooping, kneeling, crouching, crawling, as well as an option to alternate sitting and standing. R. 31. Taken together, these references show the ALJ

7

considered the testimony of both Plaintiff and his father about his medication and was aware that Plaintiff took multiple medicines as a result of his renal transplant and took medicine for multiple other conditions including, once-yearly bouts of gout, high blood pressure, high cholesterol, joint pain, osteoporosis, heartburn, and a bout of shingles. R. 29, 32, 33, 34, 230-32, 242-43. The ALJ also specifically acknowledged Plaintiff's claims of loose joints, a low immune system, fatigue, shakes, as well as Plaintiff's father's claims that the medication made Plaintiff "unable to function." R. 32.

However, the ALJ contrasted these claims with Plaintiff's statements of engaging in a wide range of daily activities that included self-care activities, house chores, shopping, visiting family and friends, taking care of his finances, as well as taking a trip to Hawaii.[3] R. 32-33. The ALJ also reviewed the medical evidence, which, but for one note in 2010, does not show Plaintiff complained of side effects from his medicine. A note by a psychiatrist, Dr. Simon Sebastian, states Plaintiff presented with "vague complaints of poor sleep, joint pain, and malaise, which he attributed to his current medication." R. 398. Dr. Sebastian did not recommend any medication changes, and nothing in the record correlates any particular alleged side effect to any particular medication.

Plaintiff contends it was incumbent on the ALJ to seek out additional information about the side effects about which Plaintiff and his father testified. See Cowart, 662 F.2d at 737 (faulting ALJ for not fully developing record where pro se claimant testified about taking a multitude of medication and was "kind of zonked most of the time"). In effect, Plaintiff argues that he did not have to show his medicine impacted his ability to work, but that the ALJ had to

---

[3]Plaintiff's assertions that the ALJ improperly analyzed Plaintiff's reported daily activities are addressed in detail in Part III.C, *infra*.

show it did not. However, the burden is on a claimant to prove he is disabled, and he must introduce evidence supporting a claim that his alleged symptoms, including medicinal side effects, make him unable to work. Walker v. Commissioner of Soc. Sec., 404 F. App'x 362, 366 (11th Cir. 2010) (citing Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003)).

Here, unlike Cowart, Plaintiff was represented by counsel during the administrative hearing and had the opportunity to present evidence in support of his claims of disabling side effects of his medicine. He presented no such evidence at the hearing, or in his current briefing, and the record as thoroughly reviewed by the ALJ does not support the subjective claims or show that the ALJ erred in his assessment of Plaintiff's alleged side effects. See Burgin v. Commissioner of Soc. Sec., 420 F. App's 901, 904 (11th Cir. 2011) (collecting case law explaining ALJ not required to elicit testimony on alleged side effects of medications in cases where there is no evidence showing medicine causes side effects, including where record did not disclose concerns from doctors about side effects). The ALJ acknowledged Plaintiff's subjective complaints and claimed medicinal side effects, but after an extensive review of the record, determined the complaints were not credible at the level of intensity claimed or with limiting effects that would preclude him from performing light work with the extensive list of limitations in the RFC. R. 31-36. The ALJ did not err on this point.

### C. The ALJ Properly Considered the Testimony Concerning Plaintiff's Daily Activities.

Plaintiff also alleges that the ALJ improperly accepted certain portions, but rejected other portions, of the testimony by Plaintiff and his father concerning Plaintiff's daily activities. Plaintiff argues, "So it appears the ALJ is believing the Plaintiff can do what he says he can do, but not believe that he cannot do what he says he cannot do." Pl.'s Br., p. 8.

9

In essence, Plaintiff appears to contend that the ALJ should have either accepted or rejected *in toto* the testimony concerning Plaintiff's daily activities. Plaintiff cites no case law in support of this all or nothing proposition.

The ALJ made the following findings when assessing the credibility of Plaintiff's subjective complaints:

> The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The statements in the record indicate he is independent for most self-care activities, performs a variety of daily activities, interacts with others on [a] regular basis, engages in purposeful activity, and is able to take care of others. The claimant has described his daily activities that included watching television, using [the] computer, preparing his own meals, cooking dinners, doing laundry and dishes, cleaning, vacuuming, sweeping, mopping, cutting grass in the yard, and taking care of his dog. He drives a car, shops in stores, goes to church, visits his parents in their house, and spends time going out with a friend. The claimant indicated he can go out alone and is able to take care of his own finances. He goes outside daily and gets along well with family, friends, and authority figures. He can follow written and spoken instructions well and does not need reminders to go places. Medical records reveal that the claimant has been more active, and that he recently went to Hawaii. (Exhibits 4E, 5E, and 23F, p. 2; Testimony).

R. 32, 33. The ALJ concluded that all of these activities amounted to "a rather normal level of daily activity and interaction" and were consistent with the mental and physical capabilities for obtaining and maintaining employment. R. 33.

One paragraph thereafter, the ALJ found that the testimony from Plaintiff's father did not credibly establish any different conclusion. The ALJ did not recount all of the father's testimony, (see R. 110-18), but as is evidenced by the recap of Plaintiff's testimony and his father's testimony in the briefing, (Pl.'s Br., pp. 10-12), the father's testimony about Plaintiff's daily activities was largely duplicative of Plaintiff's own testimony. In reference to the father's testimony, the ALJ did note that the father had "not only the usual familial

10

interest in [Plaintiff's] claim but also a financial one since he helps supporting him." R. 33.

Although Plaintiff asserts there is no basis for the ALJ's statement that the father has a financial interest since he helps support Plaintiff, (Pl.'s Br., p. 9), Plaintiff testified that he gets financial support from his parents. R. 91, 105. The record also contains a report from a transplant nephrologist caring for Plaintiff that reflects Plaintiff's parents "have supported him his whole life," and that he had no commercial insurance for a reportedly $70,000 emergency appendectomy. R. 491, 694. Indeed, notes from a psychiatrist who saw Plaintiff indicate that at one time, Plaintiff wanted to get a job, but his father wanted him to apply for disability. R. 694. In the end, the ALJ afforded "little weight" to Plaintiff's or his father's testimony regarding complaints of disabling symptoms and limitations. R. 33.

The ALJ properly conducted the Holt analysis and concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his subjective complaints concerning the intensity, persistence, and limiting effects were not credible beyond those reflected in the RFC. R. 30-36. As recounted in the Commissioner's briefing, (Comm'r's Br., pp. 5-6 and treatment records cited therein), the ALJ (1) conducted an extensive review of the medical evidence, including diagnostic studies, conservative treatment by Plaintiff's doctors, control of symptoms with medication, and a return to work after a second kidney transplant, (2) contrasted those medical records with the level of claimed severity of symptoms by Plaintiff, and (3) determined that although Plaintiff had medically determinable impairments that could cause the symptoms alleged by Plaintiff, the claimed severity of those symptoms was not entirely credible.

Plaintiff points to no medical evidence suggesting a level of fatigue as claimed by Plaintiff and his father. The ALJ was clearly aware of the testimony claiming extensive

11

limitations, as he acknowledged that the complaints of disabling symptoms and limitations did not match the described daily activities or medical evidence that was reviewed in detail. R. 32-36. There is no requirement that the ALJ specifically reference in his opinion every piece of evidence in the record. Dyer, 395 F.3d at 1211. Nor is it a requirement that the ALJ specifically reference redundant or duplicative testimony where it is clear, as it is in this case, that the substance of subjective complaints have been addressed. Pauldo v. Astrue, No. 308-011, 2008 WL 5188806, at *5 & n.3 (S.D. Ga. Dec. 10, 2008) (Bowen, J); see also Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (finding no error in failing to discuss spousal testimony that was essentially redundant of the claimant's testimony which was explicitly addressed).

The ALJ credited the testimony that was consistent with the medical evidence, but, in accordance with Eleventh Circuit case law, explained why he rejected other portions of the testimony that were not credible. Indeed, as recounted by the ALJ, Plaintiff's treating transplant nephrologist reported Plaintiff had been "relatively stable" since his second transplant in 1990. R. 33-34 (citing Ex. 13F); R. 90. Consultative examinations in 2009 and 2011 also found no restrictions on the level claimed by Plaintiff and his father that would prevent Plaintiff from performing light work with the restrictions stated by the ALJ. R. 34 (citing Exs. 2F, 4F). The ALJ discounted the claims of extreme exhaustion and fatigue by comparison with the medical records and daily activities as described above that included a trip to Hawaii and caring for a dog.

Plaintiff makes much of the fact that there was testimony concerning Plaintiff's struggle to fully participate in activities in Hawaii and that Plaintiff's dog was taken from him in 2011. Pl.'s Br., pp. 11-12. As discussed herein, the ALJ properly discounted the severity of the claimed restrictions, and Plaintiff has pointed to nothing establishing that an ability to fully

12

participate in vacation activities in Hawaii or taking care of a dog is a prerequisite to being able to perform light work with the restrictions identified in the RFC. To the extent Plaintiff's father testified that Plaintiff's dog had to be taken away because it was "very ill-kept," (R. 115), there is nothing describing the "ill-kept" condition or what led to any problems caring for the dog. In light of the entirety of the reasons for discounting the severity of Plaintiff's claimed subjective symptoms, failing to describe the details of a trip to Hawaii or exploring the reasons why Plaintiff's family took away his dog does not from a basis for remand.

In sum, the ALJ properly analyzed the subjective complaints voiced by Plaintiff and again repeated by his father.

### D. The AC Did Not Err in Refusing to Remand the Case to the ALJ for Consideration of Additional Material.

Lastly, Plaintiff contends that he presented information to the AC that should have resulted in a remand to the ALJ for further consideration. Pl.'s Br., pp. 5-6. In particular, Plaintiff presented treatment notes from a psychiatrist, Dr. Ben C. Bernard, covering three visits in a one-month period in 2012, which Plaintiff contends contradicts the ALJ's finding that Plaintiff did not have a severe mental impairment. Pl.'s Br., p. 6; R. 689-95.

Under Eleventh Circuit law, "when a claimant properly presents new evidence to the [AC], a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). In other words, when the AC denies review despite the submission of additional evidence, the determinative inquiry is whether Plaintiff has submitted "new, material, chronologically relevant evidence" to the AC that "renders the decision of the [ALJ] to deny benefits unsupported by substantial evidence." Id. at 1261, 1266. "'New'

evidence is evidence that is non-cumulative, and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" Robinson v. Astrue, 365 F. App'x 993, 996 (11th Cir. 2010) (quoting Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987)).

Here, Plaintiff cannot meet the materiality standard. As aptly summarized by the Commissioner, Dr. Bernard's findings were "unremarkable." Comm'r's Br., p. 14. Although Dr. Bernard diagnosed Plaintiff with a mood and anxiety disorder, (R. 694), the mere existence of a condition does not establish the existence of a severe impairment that could be expected to interfere with Plaintiff's ability to work. Smith v. Commissioner of Soc. Sec., 501 F. App'x 875, 879 (11th Cir. 2012); see also McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (explaining that claimant bears the burden of demonstrating severe impairment significantly affects ability to perform basic work activities). In one month's time, Dr. Bernard reported continuous improvement, with one notation stating, "Amazing ∆ [change] in this person for better." R. 695. The notes record that Plaintiff went to the Masters Golf Tournament and Hawaii, (R. 691), and that Plaintiff is "looking for discussion." R. 695. They do not contain any restrictions or prescriptions for medication to treat a mental condition.

The record shows that at step two of the evaluation process, the ALJ thoroughly discussed Plaintiff's depression and anxiety in light of Plaintiff's daily activities; lack of psychiatric hospitalization; infrequent mental health treatment; Plaintiff's own testimony that he does not take medication or receive counseling for mental impairments; and statements that his depression and anxiety have never interfered with his ability to work. R. 30, 583-84. Indeed, at the hearing Plaintiff testified that depression and anxiety would not prevent him from working. R. 99. When Plaintiff's attorney questioned him at the hearing about his depression and anxiety,

14

Plaintiff conceded he was not currently taking medication or seeing a counselor for the conditions, and the attorney characterized the line of questioning as "just wanting to cover my bases." R. 98. When the ALJ questioned the attorney at the beginning of the hearing about wanting to raise depression and anxiety impairments, the attorney conceded that the consultative examination he ordered for Plaintiff did not "show[] a lot [about depression]. . . . It may be more situational." R. 87-88.

Perhaps most importantly to the materiality analysis, although the ALJ did not find any severe mental impairments at step two of the evaluation process, he did find other severe impairments and continued with the sequential process. When setting Plaintiff's RFC at step four, the ALJ included mental limitations: "The claimant is further limited to occupations requiring no more than simple routine repetitive tasks not performed in a fast paced production environment, involving only simple work related instructions and decisions and relatively few work place changes." R. 31. Given the other medical evidence and testimony reviewed by the ALJ about Plaintiff's mental impairments, as well as the mental limitations already included in the RFC, the Court concludes there is not a real possibility that the administrative result would change based on the unremarkable findings in Dr. Bernard's notes from a one-month time period. Indeed, a claimant must show his inability to work for a continuous period of not less than twelve months. See 20 C.F.R. §§ 404.1505(a) & 416.909. Thus, the ACs refusal to remand the case to the ALJ based on the submission of this additional evidence does not warrant a remand of this case.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a

15

final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 22nd day of June, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA